JOHN JACKSON v. THE STATE.

*No. 107. Decided February 15.*

1. **Continuance—Second Application.**—On a trial for murder. where defendant made a second application for continuance, and it was shown that the facts proposed to be proved by the absent witnesses could have been established by numerous witnesses who testified on the trial, which was not attempted to be done, *held,* that the overruling of the application, when considered on the motion for new trial, was correct.

2. **Same.**—Where it appears that the absent testimony sought in the application for continuance, even if true, was unknown to defendant and could not have influenced or affected his action at the time of the homicide, *held,* that the application for continuance and motion based thereon were properly overruled.

3. **Expert or Opinion Evidence as to Size of Pistol Balls.**—Where the State was permitted to prove by a witness, over defendant's objection, his opinion of the size of the balls with which deceased was killed, *held,* that the testimony was immaterial and harmless where the testimony abundantly showed they were of sufficient size and weight to perform their deadly work.

4. **Evidence — Declarations of Third Parties.** — Defendant proposed to prove by a witness who left the dancing party prior to the homicide, that he (witness) requested deceased and one G. to accompany him, whereupon G. declined, with the remark that he "was going to break up the damned dance." *Held,* that the testimony was properly excluded on objection by the State, since the deceased was in no way responsible for the remark.

5. **Charge of Court—Malice.**—Where the court instructed the jury that "malice is a condition of the mind that shows a heart regardless of social duty, and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken," *held,* that the charge was both correct and sufficient, as well as in strict harmony with previous decisions of this court.

APPEAL from the District Court of Jack. Tried below before Hon. J. W. PATTERSON.

Appellant was indicted for the murder of James Hardin, and at his trial was convicted of murder in the second degree, his punishment being affixed at thirty-five years in the penitentiary.

The difficulty which resulted in the killing occurred at a country dance, on Jasper Creek, in Jack County, Texas, on the night of the 15th of December, 1891. A quarrel ensued between deceased and defendant, and one or two others, as to who should dance in a set. After some sharp words, the parties went out of doors, when James Jackson, defendant's brother, called deceased "a damned son-of-a-bitch;" at this deceased either struck at him or pushed him with his hand, and one of the Jackson brothers struck deceased with his pistol, which caused him to stagger back. When he recovered two pistol shots were fired; some of the witnesses testifying that both of the shots were fired by defendant, and others that one was fired by the defendant and one by his brother, James Jackson. Both shots struck Hardin in the left breast, and he died in a very

few minutes. None of the witnesses testified to seeing Hardin have a knife in his hand during the difficulty. One or more of defendant's witnesses testified, that just after the shooting James Jackson exhibited a cut in the breast of his coat, which he said was done by Hardin when Hardin struck at him before the shooting took place. The only knife found about Hardin after the killing was a small pocket-knife, and that was found in his pocket, shut up. It appears that Hardin was a stranger to most of the parties at the dance, and was on a visit to his uncle in the neighborhood.

*Sil Stark* and *Harry W. Kuteman*, for appellant, filed an able and elaborate brief.

*R. L. Henry*, Assistant Attorney-General, for the State, also filed an able brief in the case.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at thirty-five years confinement in the penitentiary, from which conviction he appeals to this court.

He applied for, and was refused, a second continuance of his cause. The facts expected to be proved by Mrs. Mobley, Lucy West, and Henry Stevens, if true, could have been shown by several witnesses who testified at the trial, because such facts transpired, if at all, at and immediately in front of the house, where twenty to forty people were assembled. The homicide occurred at a dancing party in the country, where the evidence shows the termination of such parties with personal difficulties seemed to have ripened into a well-recognized custom. Everybody present on the occasion of this difficulty seemed to have given this difficulty their personal attention, and every word, act, and movement, gesture and declaration, of the parties engaged, was watched by the bystanders with the greatest interest. If the defendant had used the language imputed to him in the application, it would have been heard by the witnesses who testified, because a difficulty was expected, and every word' uttered and act performed by the parties to it was said and done in the expectant and surrounding crowd. If the testimony was true, it could have been proved by some of these witnesses. It is shown by the testimony of the witness Walter Thomason that Lee Griffith and Jeff Bull would not have testified as set forth in the application. Besides, if true, the testimony could not have affected defendant, because he was unaware of it at the time of the homicide.

The witness Sam Bull was, over defendant's objection, permitted to state his opinion as to the size of the pistol balls with which deceased was shot. It is unnecessary to enter into a discussion of the admissibility of expert testimony, under the facts of this case, because it was proved

by all the witnesses that deceased was killed by being shot with pistols. The size of the balls was wholly immaterial. They were of sufficient size and weight to perform the deadly work intended.

Defendant offered to prove by William Thomason, when he left the party, prior to the homicide, that he requested deceased and Lee Griffith to accompany him, and that Lee Griffith declined, with the remark that he "was going to break up the damned dance." Upon objection by the State, this evidence was excluded, and we think very properly. Deceased was in no way responsible for the remark.

The definition of "malice" given in the charge is in strict conformity with an unbroken line of decisions of this court, and is correct. Martinez v. The State, 30 Texas Ct. App., 129; Ellis v. The State, 30 Texas Ct. App., 601; Ainsworth v. The State, 29 Texas Ct. App., 599. The charge fully and fairly presented the law applicable to the issues of the case, as made by the evidence.

That ground of the motion for a new trial based upon the inability of the juror Nipper to read and write, is not sustained by the facts. It is not necessary to inquire further into the question. The evidence supports the conviction, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.